|  | UNITED STATES COURT OF APPEALS | **FILED** |
|---|---|---|
|  | FOR THE NINTH CIRCUIT | DEC 22 2025 |
|  |  | MOLLY C. DWYER, CLERK<br>U.S. COURT OF APPEALS |

| | |
|---|---|
| TAUNO WAIDLA,<br><br>    Petitioner-Appellee,<br><br> v.<br><br>RONALD DAVIS, Warden,<br><br>    Respondent-Appellant. | No. 18-99001<br><br>D.C. No. 2:01-cv-00650-AG<br>Central District of California,<br>Los Angeles<br><br>ORDER |
| TAUNO WAIDLA,<br><br>    Petitioner-Appellant,<br><br> v.<br><br>RONALD DAVIS, Warden,<br><br>    Respondent-Appellee. | No. 18-99002<br><br>D.C. No. 2:01-cv-00650-AG<br>Central District of California,<br>Los Angeles |

Before: WARDLAW, CHRISTEN, and MILLER, Circuit Judges.

  All judges on the panel have voted to deny Tauno Waidla's petition for rehearing en banc. Judge Wardlaw filed a separate concurrence in the denial. The full court has been advised of the petition for rehearing en banc, and no judge of the court has requested a vote on whether to rehear the matter en banc. Fed. R. App. P. 40.

  The petition for rehearing en banc, (Dkt. 107), is DENIED.

Waidla v. Davis, Nos. 18-99001, 18-99002
WARDLAW, Circuit Judge, reluctantly concurring in the order denying rehearing en banc:

In this capital habeas appeal, a reconstituted panel of our court withdrew and replaced the original opinion—changing the disposition on grounds not requested by the state in its petition for rehearing. The original opinion affirmed the district court's grant of habeas relief based on Waidla's claim that his trial counsel was constitutionally defective at the penalty phase. The amended opinion flipped this result, concluding that Waidla did not suffer prejudice as a result of his counsel's constitutionally deficient assistance. The basis for this change was not a misapprehension of the facts or law, or the existence of intervening authority. Instead, a new panel member was selected to replace a retired panel member and the new panel member disagreed with the original panel majority's application of the law. In other words, a change in the composition of the panel resulted in a change of disposition, after the original opinion was filed. This reversal resulted in the difference between life and death for Waidla.

General Order 3.2(h)—which provides for the substitution of a panel member when the original panel member becomes unavailable to serve after a matter is under submission to a three-judge panel, and the remaining two judges are not in agreement—and a line of Circuit precedent seemingly allows such reconstituted panels to change the disposition of a previously filed decision. But I

1

am concerned that this practice undermines the stability and legitimacy of our court's decisions. And this concern is especially acute where, as here, a change in the panel composition directly results in the opposite disposition of an issue of constitutional dimension. Fortunately, by my count, this exact circumstance has occurred only five times.[1] However, each time it occurs, it engenders the view that judicial decisions are solely a matter of panel composition and fortuity. And in a time where the independence and legitimacy of the courts is under assault, we must be especially attuned to how our dispositions (or change in dispositions) affect the public's perception of the courts. As Judge Reinhardt wrote, almost 16 years ago in response to this exact situation:

> [I]t is unwise for a court, once it has published an opinion on a constitutional question, to change its mind for so fortuitous and subjective a reason. Rather, I suggested that a procedure [en banc proceedings] exists under which we could reach a different result through a more objective process in which the merits, not the composition of the panel, would provide the basis for our action. Proceeding in the latter manner would help to secure the legitimacy of court decisions and, necessarily, to maintain public confidence in the judicial system.

*Carver v. Lehman*, 558 F.3d 869, 881 (9th Cir. 2009) (Reinhardt, J., concurring).

---

[1] *See Carver v. Lehman*, 558 F.3d 869, 878-79 (9th Cir. 2009); *Perez v. City of Roseville*, 926 F.3d 511, 524-28 (9th Cir. 2019); *Smith v. Agdeppa*, 81 F.4th 994 (9th Cir. 2024); *Kelsey v. Garrett,* No. 22-15557, 2023 WL 6160627 (9th Cir. Sept. 21, 2023), *cert. denied*, 145 S. Ct. 235 (2024); *Waidla v. Davis*, 126 F.4th 621 (9th Cir. 2024).

Here, as in Judge Reinhardt's concurrence in *Carver*, I have decided not to make what in my experience would most certainly be a futile en banc call. Rather, I write to ask my colleagues to reconsider or clarify the substitution rule to avoid the situation where a newly drawn panel member alters the outcome of a previously filed opinion.

I.

In this capital habeas case, Waidla sought to overturn a conviction and death sentence imposed by the California courts based on his murder of Viivi Piirisild in 1991. The district court granted Waidla penalty phase relief, holding that his counsel was constitutionally ineffective under 28 U.S.C. § 2254(d)'s deferential standard. The district court found that Waidla's trial counsel's failure to sufficiently investigate potentially mitigating evidence constituted deficient performance, and that this deficient performance prejudiced Waidla, based in part on the jury's nine-day deliberation and submission of two jury notes indicating deadlock. The district court denied Waidla's remaining claims.

Waidla and the state cross-appealed the district court's ruling, and Judges Wardlaw, Watford, and Miller were assigned to hear the case. In a per curium opinion, published on May 23, 2023, a majority of the panel affirmed the district court's ruling, including the district court's grant of habeas relief on Waidla's claim

3

of ineffective assistance of counsel ("IAC") at the penalty phase. *Waidla v. Davis*, 68 F.4th 575 (9th Cir. 2023), *vacated and superseded*, 126 F.4th 621. Judge Miller concurred in most of the decision but dissented with respect to Waidla's penalty phase IAC claim, asserting that under § 2254(d)'s deferential standard, Waidla's counsel was neither deficient nor was any deficient performance prejudicial. *See id.* at 600-06 (Miller, J., concurring).

On May 31, 2023, Judge Watford publicly announced that he would retire, leaving only Judges Wardlaw and Miller on the panel. On July 6, 2023, the state filed a petition for panel rehearing ("PFR"), seeking a correction of a single footnote. Specifically, the state contended that the panel incorrectly stated that the state forfeited any objection to the district court granting relief based on exhibits submitted by Waidla.

The next day, on July 7, 2023, an off-panel judge requested 5.4(b) notice. We ordered a response to the state's PFR, and because Judge Miller and I disagreed on the merits of the case itself, we formally requested that the clerk's office draw a new judge pursuant to General Order 3.2(h). The clerk's office drew Judge Christen, and on July 17, 2023, Judge Christen was appointed.[2]

---

[2] In his opposition to the state's PFR, Waidla argued that the panel should deny the PFR, notably also asserting that a petition for rehearing en banc was the more appropriate procedure for amending or altering the original opinion under these

4

On November 17, 2023, Judge Christen requested re-argument. On November 21, 2023, the reconstituted panel ordered re-argument, which was held on January 25, 2024.

On December 23, 2024, the reconstituted panel vacated the original opinion and issued a new per curiam opinion, which reversed the district court's grant of habeas relief to Waidla based on his penalty phase ineffective assistance of counsel claim. Judge Christen separately concurred; she agreed that Waidla's trial counsel acted deficiently, but she believed that the deficient performance did not prejudice Waidla. I dissented, adopting the analysis in the original opinion that Waidla had shown both deficient performance and prejudice. The reconstituted panel denied the state's PFR as moot but otherwise did not explicitly address the state's PFR.

On February 19, 2025, Waidla filed a petition for rehearing en banc ("PFREB"), arguing that the reconstituted panel's decision "put Waidla back on death row after nineteen months with a life sentence."

Waidla argues that allowing a reconstituted panel to alter an already published opinion "effectively allow[s] for" panel rehearing without regard for the

---

circumstances. As Waidla's counsel wrote, "[t]his approach is also consistent with the requirement that '[c]ases and controversies shall be heard and determined by a court or panel of not more than three judges' except where there is a vote for hearing en banc. *See* 28 U.S.C. § 46(c)."

5

procedures set forth in Federal Rule of Appellate Procedure 40(b)(1)(A), "undermine[s] the principle of finality," "result[s] in gross judicial inefficiency," "open[s] the floodgates to judge shopping," and "diminish[es] the reliability and efficiency of all of the Court's opinions." I agree.

## II.

Our precedent recognizes:

> Until the mandate has issued, opinions can be, and regularly are, amended or withdrawn, by the merits panel [(1)] at the request of the parties pursuant to a petition for panel rehearing, [(2)] in response to an internal memorandum from another member of the court who believes that some part of the published opinion is in error, or [(3)] *sua sponte* by the panel itself.

*Carver*, 558 F.3d at 878-79; *see also In re Zermeno-Gomez*, 868 F.3d 1048, 1053 (9th Cir. 2017) ("[U]ntil the mandate has issued, a published decision by a panel of this court is subject to modification, withdrawal, or reversal."). This rule generally applies to a panel that has maintained its composition throughout each step. However, on at least five occasions, we have permitted a change in the panel composition (made after the decision was published but before the mandate issued) to directly alter the disposition of an already decided issue. *See Carver*,[3] 558 F.3d

---

[3] It is also worth noting that in none of the cases that *Carver* cited for support for the view that panels regularly amend and withdraw opinions, was there a change in panel composition in the interim. 558 F.3d at 879 nn.17 & 18; *id*. at 881 n.2 (Reinhardt, J., concurring).

6

at 878-79; *Perez v. City of Roseville*, 926 F.3d 511, 524-28 (9th Cir. 2019); *Smith v. Agdeppa*, 81 F.4th 994 (9th Cir. 2024); *Kelsey v. Garrett,* No. 22-15557, 2023 WL 6160627 (9th Cir. Sept. 21, 2023), *cert. denied*, 145 S. Ct. 235 (2024); *Waidla v. Davis*, 126 F.4th 621 (9th Cir. 2024).

Beginning with *Carver*, a panel consisting of Judges Ferguson, Reinhardt, and M. Smith affirmed a district court's grant of summary judgment against a prisoner who brought a procedural due process claim against the Washington Department of Corrections for denying him a transfer to community custody. 528 F.3d 659, 670 (9th Cir. 2008), *opinion withdrawn on denial of reh'g*, 540 F.3d 1011 (9th Cir. 2008), *opinion amended and superseded*, 550 F.3d 883 (9th Cir. 2008). In a decision authored by Judge Reinhardt and joined by Judge Ferguson, a majority of the original panel concluded that although the prisoner had a protected liberty interest, qualified immunity applied. *Id.* at 663-69. Judge M. Smith concurred in the judgment, disagreeing with the majority that the prisoner had a liberty interest. *Id.* at 670 (M. Smith, J., concurring).

However, while a PFR and PFREB were pending, Judge Ferguson passed away, and Judge Tallman was drawn to replace him. Following this change in the panel composition, the original opinion was withdrawn and replaced with a new opinion. The new opinion still affirmed the district court, but on different grounds; it concluded that the prisoner did not have a protected liberty interest. *Carver*, 558

F.3d at 871.  Judge Reinhardt concurred, emphasizing the impropriety of the reconstituted majority's actions:

> [I]t is indisputable that the law did not change and the Constitution did not change between the time of the original panel's decision and the time of the new majority's opinion. All that changed is the composition of the three-judge panel.  To those who question whether the results in constitutional and other cases depend on the membership of the panel, or whether the replacement of even a single Supreme Court justice can change the fundamental nature of the rights of all Americans with respect to matters as basic as affirmative action, a woman's right of choice, and the nature of religious liberty, the result in the case currently before our panel is merely a minor illustration of how the judicial system currently operates. . . .
>
> In the case before us, it is not necessary for the new majority to undo the original majority's constitutional ruling, even if it disagrees with it. The constitutional question is a close one, and substantial arguments can be made for either position.  Under these circumstances, the more important consideration, in my view, is maintaining the stability and legitimacy of the court's decisions.  We have a procedure for correcting decisions that a majority of the court believes warrant reconsideration. That process is known as a[n] en banc rehearing.  It can be invoked if any single judge on the court, including either member of the majority, elects to make a call.  Relying on this process would, in my view, be in the better interests of the court and the judicial system; increasing the extent to which judicial decisions depend on chance and subjectivity is not a wise alternative.

*Id.* at 880-81 (Reinhardt, J., concurring).

To be sure, Judge Reinhardt conceded that the reconstituted panel had the authority to withdraw and amend the opinion.  *See id.* at 881 ("I have not suggested, nor do I believe, that Judge Smith and Judge Tallman do not have the authority to withdraw the opinion filed by the initial panel and published as the

8

opinion of the court. Of course, they do.") (Reinhardt, J., concurring). However, in my view, the practice of allowing new panel members to substitute their own judgment for one of their colleagues is in deep tension with the text and spirit of Federal Rule of Appellate Procedure Rule 40. "We have a procedure for correcting decisions that a majority of the court believes warrant reconsideration. That process is known as a[n] en banc rehearing." *Id.* at 880-81 (Reinhardt, J., concurring).

However, I believe the real culprit here is not the inherent authority to alter, amend, and withdraw an already published opinion by the same panel. The problem is the language of General Order 3.2(h). It provides:

> If, *after a matter is under submission to a three-judge panel*, a judge becomes unavailable by reason of death, disability, recusal, or retirement from the Court, the remaining two judges may – if in agreement – decide the matter as a quorum pursuant to 28 U.S.C. § 46(d), or shall request the Clerk to draw a replacement judge. If the two judges are not in agreement, the Clerk shall draw a replacement judge. If a replacement judge is requested, the Clerk shall draw a replacement judge from among active judges (and senior judges willing to serve), drawn by lot. Once a replacement judge is designated, the Clerk will advise the parties.

Ninth Circuit General Orders 3.2(h) (emphasis added).

Waidla persuasively argues that his case was no longer "under submission," i.e., being considered, when Judge Christen was drawn to replace Judge Watford— it had already been decided.

Indeed, Judge Molloy dissenting from the newly constituted panel majority's decision in *Perez v. City of Roseville*, explained:

> Submission is the process by which the panel has received and reviewed the record, heard argument by the parties, and taken the matter under consideration for decision. *Cf.* 9th Cir. R. 25-4 (distinguishing among cases that have been scheduled for oral argument, argued, submitted, and decided). Deciding the case takes place when a quorum of two on the panel agrees to an appropriate disposition. . . . The majority's emphasis on the absence of a mandate misses the mark. Once the case is decided by a quorum of the panel judges it is no longer under submission. Because this case was not under submission when Judge Reinhardt died, General Order 3.2(h) is not applicable.

926 F.3d at 527 (Molloy, J., dissenting) (citation omitted). Further, the Ninth Circuit Rules and General Orders contemplate "under submission" as being distinct from the filing of a disposition. *See* 9th Cir. R. 25-4 (listing relevant dates for calendared cases as including the "date of argument," date of "submission," and date of "decision"); Ninth Circuit General Orders 9.1 ("Each judge shall periodically report to the Chief Judge the number of cases under submission assigned to the reporting judge for the preparation of dispositions, the number of such cases in which dispositions have been written and are in circulation, and the length of time such cases have been under submission and, where applicable, in circulation.").

As Judge Molloy noted, "[t]here is no need for a substitution when the majority decided and published the opinion questioned here. . . . A published quorum opinion is not under submission; it is final, except if the entire court

10

corrects it *en banc*." *Perez*, 926 F.3d at 528 (Molloy, J., dissenting) (citations omitted). And in this case an off-panel judge requested 5.4(b) notice, starting the process of rehearing en banc of the original panel decision, before Judge Christen was appointed as the replacement for Judge Watford.

As the Supreme Court has stated "[u]nder [28 U.S.C.] § 46(c), a court of appeals case may be decided by a panel of three judges, and therefore on such a panel two judges constitute a quorum and are able to decide an appeal—provided, of course, that they agree." *Yovino v. Rizo*, 586 U.S. 181, 185-86 (2019). Here a quorum of the court publicly released its decision in this case. Unlike in *Yovino*, Judge Watford was still an active judge when the decision was released, thus, that decision stood as the opinion of our court. "In *Yovino*, the Supreme Court recognized the appropriate procedure in such a situation by acknowledging the rules in this and other circuits: 'Like other courts of appeals, the Ninth Circuit takes the position that a panel decision . . . can be overruled only by a decision of the en banc court or this Court.'" *Perez*, 926 F.3d at 526 (J. Molloy, dissenting) (quoting *Yovino*, 586 U.S. at 183).

The procedure we followed in this case also ran afoul of the appropriate procedure for rehearing set forth in Federal Rule of Appellate Procedure 40 and is in tension with the requirements of 28 U.S.C. § 46.

### a. Federal Rule of Appellate Procedure 40

Federal Rule of Appellate Procedure 40 outlines two types of petitions that a party may file in response to a filed disposition: a PFR and PFREB. Each of these petitions serves a distinct function. *See* Fed. R. App. P. 40 Advisory Committee's Comment to 2024 Amendment ("Panel rehearing and rehearing en banc are designed to deal with different circumstances.").

"A properly drawn petition for rehearing serves a very limited purpose." *United States v. Mageno*, 786 F.3d 768, 774 (9th Cir. 2015) (quoting *Armster v. U.S. Dist. Court for Cent. Dist. of Cal.*, 806 F.2d 1347, 1356 (9th Cir. 1986)). "The purpose of petitions for rehearing, by and large, is to ensure that the panel properly considered all relevant information in rendering its decision." *Armster*, 806 F.2d at 1356. Accordingly, unlike a PFREB, a PFR focuses on "point[s] of law or fact that the petitioner believes the court has overlooked or misapprehended." Fed. R. App. P. 40(b)(1)(A). "Our authority under Rule 40, therefore, extends only to those situations in which we have 'overlooked or misapprehended' a 'point of law or fact.'" *Mageno*, 786 F.3d at 774 (citation omitted). "A party 'abuse[s] ... the privilege of making such a petition' when it seeks review of a scope greater than the limited confines of Fed.R.App.P. 40.'" *Armster*, 806 F.2d at 1356 (alteration in original) (quoting *Anderson v. Knox*, 300 F.2d 296, 297 (9th Cir. 1962)). And while a panel may consider the effect of subsequently issued controlling legal

12

opinion, before the mandate issues, *see id.* at 1357, "a petition for rehearing is not a vehicle for a party to 'study and reargue his case anew.'" *Mageno*, 786 F.3d at 775 (quoting *Anderson*, 300 F.2d at 297).

By contrast, a PFREB is designed to handle more substantive disagreements where "the panel decision conflicts with": (1) "a decision of the court"; (2) "a decision of the United States Supreme Court"; (3) "an authoritative decision of another United States court of appeals"; or (4) where "the proceeding involves one or more questions of exceptional importance." Fed. R. App. P. 40(b)(2). In other words, a PFR is designed to address a point of law or fact that the original panel overlooks or misapprehends, while a PFREB is designed to address purported errors in the original panel's application of law. *See also W. Pac. R. Corp. v. W. Pac. R. Co.*, 345 U.S. 247, 262-63 (1953) ("[I]t is essential to recognize that the question of whether a cause should be heard en banc is an issue which should be considered separate and apart from the question of whether there should be a rehearing by the division.").

In light of these principles, judges in our sister circuits have recognized that in similar circumstances—where a member of the original panel is no longer able to serve and the remaining members of the panel disagree on resolving a PFR—the appropriate course of action is to seek amendment through the en banc process. *See People of State of N.Y. by Abrams v. 11 Cornwell Co.*, 718 F.2d 22, 24 (2d Cir.

1983) (noting that the court decided to rehear the case en banc because following the death of one of the panel members, the remaining members of the panel were divided on how to resolve a petition for rehearing); *United States v. Safehouse*, 991 F.3d 503, 503 n.1, 505 (3d Cir. 2021) (noting that no judge on the original panel, including a judge who dissented in the original opinion and dissented from the denial of rehearing en banc, voted for panel rehearing); *Martin Cnty. Coal Corp. v. Universal Underwriters Ins. Co.*, Nos. 11-5773/11-5793, 2013 U.S. App. LEXIS 22674 (6th Cir. Oct. 25, 2013) (denial of rehearing by a divided panel of two judges, explaining that "the issues raised in the petition were fully considered upon the original submission and decision of the cases"). Indeed, in dissenting from a denial of rehearing en banc, then-Judge Gorsuch, joined by three other judges, acknowledged that the proper method of addressing a PFR under similar circumstances was through the en banc process:

> While voting for rehearing *en banc*, I have not sought panel rehearing. The matter before us is one of "exceptional public importance," meriting *en banc* review, 10th Cir. R. 35.1(A), and I surely believe the panel got it wrong. But, I cannot say, as I must to request panel rehearing, that my panel colleagues "overlooked or misconstrued" any argument or evidence presented to them. *See* 10th Cir. R. 40.1(A). In addition, because we have, sadly, lost a panel colleague to the academy, a vote among the remaining two panel members would likely result in a tie.

*Williams v. Jones,* 583 F.3d 1254, 1256 n.1 (10th Cir. 2009) (Gorsuch, J., dissenting).

14

As Waidla argues, the reconstituted panel's amendment of the original opinion could not have been pursuant to the limited grounds requested by the state in its PFR, nor in response to en banc proceedings. Instead, it was performed pursuant to the court's inherent power to alter a disposition before the mandate issues. Although *Carver* justified its amendment on the grounds that the mandate had not been issued, the reconstituted majority (and Judge Reinhardt) misapprehended the issue before them. The issue before them was not simply whether an opinion may be withdrawn or amended prior to the mandate; instead, the precise issue was whether it is consistent with Rule 40 and our en banc procedures to permit a newly drawn panel member to reconsider the published decision of a prior quorum that had already decided the case. In my view, it is not.

### b.  28 U.S.C. § 46

Pursuant to 28 U.S.C. § 46(c): "Cases and controversies shall be heard and determined by a court or panel of not more than three judges . . . unless a hearing or rehearing before the court in banc is ordered." Moreover, "[a] majority of the number of judges authorized to constitute a . . . panel thereof . . . shall constitute a quorum." 28 U.S.C. § 46(d).  Thus, even if a judge on the original panel can no longer serve on the panel, the remaining two judges constitute a quorum able to decide any case or controversy so long as they agree on the outcome of that case or controversy.

15

"Under our 'law of the circuit doctrine,' a published decision of this court constitutes binding authority which must be followed unless and until overruled by a body competent to do so." *In re Zermeno-Gomez*, 868 F.3d 1048, 1052 (9th Cir. 2017) (quotation marks and citations omitted). This is the case even if a mandate has yet to issue. Indeed, "a stay of the mandate does not 'destroy the finality of an appellate court's judgment,' and [] a published decision is 'final for such purposes as stare decisis, and full faith and credit, unless it is withdrawn.'" *Id.* (quoting *Wedbush, Noble, Cooke, Inc. v. SEC*, 714 F.2d 923, 924 (9th Cir. 1983)).

To be sure, a panel retains the ability to withdraw and amend its own opinions before issuance of the mandate, *see In re Zermeno-Gomez*, 868 F.3d at 1053, but consistent with the principles undergirding Federal Rule of Appellate Procedure 40 and 28 U.S.C. § 46, the exercise of that power should require the consent of a quorum of the original panel. General Order 5.3(c) explains that "[a]fter an en banc call is made, but prior to the completion of a successful vote on whether the case should be reheard en banc . . . a panel may withdraw *its* opinion and issue a new opinion or file a superseding amended opinion." (emphasis added). The Order speaks in terms of the panel's *own* decision. And, absent an en banc hearing, a panel cannot consist of any more than three judges.[4] The exercise

---

[4] Indeed, as Waidla persuasively argues, the appeal was "heard in full by four panel judges" of this court. The State contends that "the existence of a panel" is not

16

of withdrawing or amending an opinion should therefore require the consent of a quorum of the original panel.

While "it is generally understood that a judge may change his or her position up to the very moment when a decision is released," *Yovino*, 586 U.S. at 184, another judge should not be able to step in and change an original panel member's mind for them—especially after a decision has been released to the parties and the public. Accordingly, the court should limit a reconstituted panel's ability to *sua sponte* withdraw and amend a published opinion. The court should require the consent of a quorum of the original panel to make such withdrawals or amendments. Absent a quorum of the original panel, an opinion should only be amended through the en banc process. Such an approach is consistent with 28 U.S.C. § 46(c)'s command that a case or controversy be decided by *either* an en banc court *or* a panel of no more than three judges.

---

"determined by the identity of the panelists," and therefore "[t]he replacement of the unavailable judge did not add a fourth judge to the panel; rather, assignment of the replacement judge completed the three-judge panel that was short one panelist." But this Circuit defines a panel as "a division of more than one judge of this Court to which a case or motion is referred for disposition." General Order 1.6. If that "division" of judges has changed—because the members on the panel have changed—then the panel itself has changed as well. And in this case, that change resulted in four different judges each hearing, considering, and deciding the merits of the appeal.

Now, I recognize that if a member of the panel is newly drawn pursuant to General Order 3.2(h), that judge, as an Article III judge, will not want to be bound by the absent member's conclusion, and will wish to decide the case in accordance with her view of the law and facts. This is why I conclude that the real culprit is found in General Order 3.2(h). We should consider changing this rule to act like it says it does, and provide for replacement judges only when the case is under submission,[5] before it is decided.

### III.

I recognize that this case presents a close question on the issue of prejudice—a question on which the district court, Judge Watford, and I agree. However, where the difference of disposition is life or death, we should err on the side of life and be wary of changing the result to death. The disposition of this case should only have been changed through a quorum of the original panel or through the en banc process.[6] Accordingly, I urge my colleagues to reconsider and amend our practice

---

[5] The term "submission" is not the only ambiguous term in General Order 3.2(h). The rule twice mentions "agreement" by the two remaining judges, but does not tell us "agreement as to what." If the rule, for example, specified "in agreement as to the petition for panel rehearing," the remaining judges, though not in agreement as to the merits, might very well agree that the PFR or PFREB, filed after the panel decision was published, lacked merit. Indeed, here, the new majority decided the case without resolving the point raised in the PFR.

[6] For those of our colleagues who may be concerned that this process might burden our court with too many additional en banc hearings, that a substitution has

18

and rules to require a quorum of the original panel to withdraw or amend a panel opinion.

---

changed the outcome in a case only five times since *Carver* in 2009 should ameliorate this concern.